**NO. 24-1336**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

HEALTHeSTATE, LLC,

*Appellant,*

v.

UNITED STATES,

*Appellee.*

_____

On Appeal From the United States Court of Federal Claims
No. 1:18-cv-34C

_____

**BRIEF FOR APPELLANT**

_____

BRYANT S. BANES

NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas  77027
Telephone: (713) 629-1800
Facsimile:  (713) 629-1812
Email: bbanes@nhblaw.com

*Attorneys for Appellant*

NO. 24-1336

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

HEALTHeSTATE, LLC,

*Appellant,*

v.

UNITED STATES,

*Appellee.*

_____

**CERTIFICATE OF INTEREST**

The undersigned counsel of record for Appellant certifies that the
following listed persons and entities as described in the fourth sentence
of Rule 28.2.1 have an interest in the outcome of this case. These
representations are made in order that the judges of this Court may
evaluate possible disqualification or recusal.

**Appellant**
HEALTHeSTATE, LLC

**Counsel for Appellant**
Bryant S. Banes
Email: bbanes@nhblaw.com
NEEL, HOOPER & BANES, P.C.
1800 West Loop South, Suite 1750
Houston, Texas  77027
Telephone: (713) 629-1800
Facsimile:  (713) 629-1812

**Appellees**
Secretary of Defense & ASMR

**Counsel for Appellee**
Scott Bolden
Email: sbolden@usdoj.gov
U. S. Department of Justice
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington D.C.  20044
Telephone: (202) 616-0464

**Counsel for Appellee**
Ranganath Sudarshan
Email: rsudarshan@cov.com
Covington & Burling, LLLP
One City Center, 850 Tenth St., NW
Washington, DC  20001
Telephone: (202) 662-5346

/s/ Bryant S. Banes
Counsel of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. Appellant moves, pursuant to F.R.A.P. Rule 34(a), to place this case on the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively decided, and (c) as described in the accompanying memorandum, the decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................i

STATEMENT REGARDING ORAL ARGUMENT................................. iii

TABLE OF AUTHORITIES.................................................................. vi

STATEMENT OF RELATED CASES ........................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF ISSUES.....................................................................3

STATEMENT OF THE CASE .................................................................6

    I. Procedural History .....................................................................8

    II.Statement of Facts ....................................................................12

Argument ...........................................................................................16

    A.Standard of Review ..............................................................16

    B.Breach of Contract Claims....................................................19

       1.    HeS's Claim Was Sufficient....................................................19

            This confidential material omitted on page 24 indicates the value of the ROVR contracts ASMR claimed it obtained sing HealtheState, LLC's baseline code and the number yielded with the twenty-five percent (25%) mathematical formula in HealtheState, LLC s claim to the Contracting Offer............24

            This confidential material omitted on page 24 indicates the value of the ROVR contracts ASMR claimed it obtained using HealtheState, LLC's baseline code and the number yielded with the twenty-five percent (25%) mathematical formula in HealtheState, LLC's claim to the Contracting O er.......................24

       2.    The Government and ASMR Had No License Over HeS's Baseline Code and Were Estopped From Challenge ............28

iv

3.    The Government Exceeded and Breached Its License ..............37

C. Copyright Infringement Claims .......................................41

    1.    HeS's Registration Is Valid Because There Was No Knowing Material Inaccuracy .............................................................45

    2.    The Abstraction-Filtration-Comparison Test Was Not Needed and Misapplied by the Lower Court .................................58

    3.    The Lower Court Improperly Shifted the Burden to HeS to Exclude Its Expert and Consider Immaterial Portions of HeS's Code to Reach the Result It Did ..................................62

CONCLUSION ........................................................................65

CERTIFICATE OF SERVICE ................................................66

CERTIFICATE OF COMPLIANCE WITH RULES 27(D)(2)(A), 32(A)(5) AND 32(A)(6) ...............................................................67

ADDENDUM ..........................................................................68

CERTIFICATE OF CONFIDENTIALITY ................................69

# TABLE OF AUTHORITIES

## Cases

*4DD Holdings, LLC v. United States,*
169 Fed.Cl. 164 (2023)......................................................33

*Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis,*
583 F.3d 1371 (Fed. Cir. 2009) ........................................44

*AD Global Fund, LLC v. United States,*
481 F.3d 1351 (Fed. Cir. 2007) ........................................17

*Associated Equipment Corp. v. Authorized Motors Parts Corp.,*
996 F.2d 317 (Fed.Cir.1993) .......................................64, 65

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731
F.2d 831 (Fed. Cir. 1984) ...............................................17

*Boeing Co. v. Sec'y of Air Force,*
983 F.3d 1321 (Fed. Cir. 2020) ........................................32

*Computer Associates Intern, Inc. v. Altai,* 982 F.2d 693........................42

*Cont. Cleaning Maint. v. United States,*
811 F.2d 586 (Fed. Cir. 1987) .....................................19, 26

*Creative Mgmt. Services, LLC v. United States,*
989 F.3d 955 (Fed. Cir. 2021) ..........................................27

*Dow Chemical Co. v. United States,*
226 F.3d 1334 (Fed.Cir.2000) .........................................28

*dmarcian, Inc. v. DMARC Advisor BV,*
No. 1:21-CV-00067-MR, 2023 WL 3971433 (W.D.N.C. June 12,
2023).......................................................................57, 58

*ECC International Constructors, LLC v. Secretary of the Army,*
79 F.4th 1364 (Fed. Cir. 2023)..................................1, 24, 26, 27, 36

*Electric Boat Corp. v. Secretary of Navy,*
958 F.3d 1372 (Fed.Cir.2020) .......................................27, 28

*Eng'g Dynamics, Inc. v. Structural Software, Inc.,*
26 F.3d 1335 (5th Cir. 1994) ...........................................18

*Enterpise Management Ltd., Inc. v. Construx Software Builders, Inc.*,
    73 F.4th 1048 (9th Cir. 2023)......................................................42

*FastShip, LLC v. United States*,
    892 F.3d 1298 (Fed. Cir. 2018)......................................................16

*Ford Motor Co. v. Summitt Motor Prods., Inc.*,
    930 F.2d 277 (3rd Cir. 1991) ......................................................43

*Gaffney v. Muhammad Ali Enterprises*, LLC,
    2022 WL 4095953 (S.D.N.Y., September 7, 2022) . 18, 19, 54, 56, 57

*Gaylord v. United States*,
    595 F.3d 1364 (Fed. Cir. 2010) ......................................................43

*Gaylord v. U.S.*,
    777 F.3d 1363 (Fed.Cir.2015) ......................................................17

*Glenn v. United States*,
    858 F.2d 1577 (Fed.Cir.1988) ......................................................28

*Jackson v. United States*,
    216 Ct.Cl. 25 (Ct.Cl.1978) ......................................................20, 38

*Jacobsen v. Katzer*,
    535 F.3d 1373 (Fed. Cir. 2008) ......................................................45

*John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*,
    322 F.3d 26 (1st Cir. 2003)......................................................30

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
    886 F.2d 1173 (9th Cir. 1989) ......................................................42

*Kofax v. U.S.*,
    No. 11-449C, 2013 WL 4040870 (Fed. Cl., Aug. 8, 2013) ...31, 33, 45

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir.2004) ......................................................42

*Little River Lumber Co. v. United States*,
    21 Cl. Ct. 527, (1990)......................................................25

*Mabus v. Gen. Dynamics C4 Sys., Inc.*,
    633 F.3d 1356 (Fed.Cir.2011) ......................................33, 36, 37, 49, 52

*McNeese v. Access Midstream Partners, L.P.*,
    2017 WL 972156 (W.D. Ok., March 10, 2017)......................................................60

*Mitel, Inc. v. Iqtel, Inc.*,

124 F.3d 1366 (10th Cir. 1997) ........................................ 60

*Modeer v. United States*,
68 Fed.Cl. 131 (2005) ........................................................ 19

*Mohsenzadeh v. Lee*,
790 F.3d 1377 (Fed. Cir. 2015) ........................................ 17

*Monge v. Maya Magazines, Inc.*,
688 F.3d 1164 (9th Cir. 2012) .................................... 44, 45

*Neman Brothers & Assoc., Inc. v. Interfocus, Inc.*,
No. 2:20-cv-11181, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023) ..... 50, 52, 55, 56

*Oliver v. Meow Wolf, Inc.*,
Civ. No. 20-237, 2022 WL 3682936 (D.N.M. Aug. 25, 2022) ......... 56

*Oracle Am., Inc. v. Google Inc.*,
750 F.3d 1339 (Fed. Cir. 2014) ......................... 18, 42, 58, 59, 60, 64

*PalatiumCare, Inc. v. Notify LLC*,
No. 22-CV-217, 2023 WL 2929462 (E.D. Wis. Apr. 13, 2023) 50, 53, 54, 55

*Publications Int'l, Ltd. v. Meredith Corp.*,
88 F.3d 473 (7th Cir. 1996) ............................................ 18

*Raytheon Co. v. United States*,
146 Fed.Cl. 469 (2020) ......................................... 1, 32, 38

*Regional Rail Reorganization Act Cases*,
419 U.S. 102 (1974) ........................................................ 17

*ReportHost LLC v. Spectora Inc.*,
No. 22-CV-00457-DDD-SKC, 2023 WL 2782285 (D. Colo. Mar. 29, 2023) ............................................................ 54

*Rhone Poulenc Agro, S.A. v DeKalb Genetics Corp.*,
284 F.3d 1323 (Fed. Cir. 2002) ........................................ 45

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) ........................................................ 17

*SAS Institute, Inc. v. World Programming Ltd.*,
64 F.4th 1319 (Fed.Cir.2023) ............................ 18, 62, 63, 64

*SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019 (E.D. Tex. 2020) ...................................................................... 18

*S.O.S, Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989) .................................................. 28, 45

*Stenograph L.L.C. v. Bassard Assocs., Inc.*,
144 F.3d 96, 100 (D.C. Cir. 1998) .............................................. 43

*Storage Technology Corp. v. Custom Hardware Eng'g*,
421 F.3d 1307 (Fed.Cir.2005) ................................................. 44, 45

*Tecom, Inc. v. Untied States*,
732 F.2d 935 (Fed.Cir. 1984) ...................................................... 27

*Todd Constr., L.P. v. United States*,
656 F.3d 1306 (Fed.Cir.2011) ..................................................... 26

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
142 S. Ct. 941 (2022) ..................................... 1, 4, 33,  47, 50, 55

*United States v. Diebold*,
369 U.S. 654 (1962) .............................................................. 16, 17

*U.S. v. General Electric Corp.*,
7278 F.2d 1567 (Fed.Cir.1984) ................................................. 25, 26

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948) ....................................................................... 17

*Yankee Candle Co. v. Bridgewater Candle Co.*,
259 F.3d 25 (1st Cir. 2001).............................................................. 18

*Zafer Construction Co. v. U.S.*,
40 F.3d 1365 (2022) ....................................................................... 26

## Statutes

10 U.S.C. § 231.................................................................................. 7
10 U.S.C. § 2321............................................................................ 1, 3, 38
10 U.S.C. § 2321(h) ......................................................................... 23
10 U.S.C. § 2321(h)(2)...................................................................... 23
10 U.S.C. § 3771............................................................................... 6
10 U.S.C. § 3782............................................................................ 7, 20

28 U.S.C. § 1498(b) ........................................................ 43, 44

41 U.S.C. § 601 ....................................................................... 20

41 U.S.C. § 7103(b)(3) ........................................................... 24

## Regulation

48 C.F.R. § 2.101 ................................................................... 26

48 C.F.R. § 52.227-19 ...................................................... 29, 31

48 C.F.R. § 227.7013(b)(2) ............................................... 36, 41

48 C.F.R. § 227.7103-13 ........................................................ 20

48 C.F.R. § 227.7103-15 ............................... 6, 7, 8, 14, 15

48 C.F.R. § 227.7108(a)(6) .................................................... 23

48 C.F.R. § 227.7202-3 ..................................................... 35, 40

48 C.F.R. § 227.7202-3(a) ................................................ 28, 29

48 C.F.R. § 227.7202-3(b) ..................................................... 29

48 C.F.R. § 227.7202-4(a) ................................................ 29, 30

48 C.F.R. § 227.7202-4(c) ................................................ 35, 40

48 C.F.R. § 227.7202-4(d) ............................................... 35, 40

48 C.F.R. § 252.227-7014(e)(3) ............................................. 32

## Rules

RCFC 56(a) ............................................................................ 16

## Other Authorities

Nimmer on Copyright § 12.10 .............................................. 18

3 Nimmer on Copyright § 10.15 (2017) ................................ 45

4 Melville B. Nimmer & David Nimmer,
  Nimmer on Copyright § 13.08, (B)(1) (2011) ........................... 44, 45

U.S. Copyright Office,
  Compendium of U.S. Copyright Office Practices, § 721.3 (3d ed. 2021) ........................................................ 53

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, there are no other appeals in or from the same civil action or proceeding in the Board that were previously before this or any other appellate court. There are no other cases known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

There is a statute and two primary cases and their progeny that substantially affect the outcome of this case and which Appellant contends were incorrectly applied below, namely: (1) 10 U.S.C. 2321 (*E.g., Raytheon Company v. United States*, 146 Fed. CL. 469 (2020); (2) *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. ——, 142 S. Ct. 941, 211 L.Ed.2d 586 (2022); and (3) *ECC International Constructors, LLC v. Secretary of the Army*, No. 21-2323, 2023 WL 5355302 (Fed. Cir. Aug. 22, 2023). Appx2391-2392, Appx2393-2401 & Appx2402-2408.

## JURISDICTIONAL STATEMENT

**Jurisdiction in the Court of Appeals.**  On November 21, 2023, the Court of Federal Claims entered a final judgment.  Appx 1807.  On January 3, 2024, Appellant filed a timely Notice of Appeal.  This Honorable Court has original appellate jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1295(a)(3).

# STATEMENT OF ISSUES

1. Whether it was error for the lower court to ignore both the attachments to the claim and the application of simple math to determine a sum certain and allow the claim to proceed, especially where, as here, the actual number was not knowable at the time (Doc 213, p. 6-7 & 19-20).

2. Even if it was not enough, whether it was error to disallow HeS's request to provide sum certain? prior to judgment given the equitable issues.   See Doc 213, pp. 20 & 21, n. 6. & 22-23).

3. Whether it was error for the lower court to either not consider equitable estoppel or deem the issue forfeited.

4. Whether it was legal error for the Court to ignore HeS's argument asserting that the Government exceeding its restricted license in the 0128 Contract and encouraging ASMR to exceed its license in the HeS subcontract past May 7, 2014, was a breach of contract of the established contracts. *Contra*, Doc 213, pp. 23-25.

5. Whether it was legal error for the lower court to not consider that the Government and  ASMR had no license in HeS's restricted rights code and ignore the import and consequences of 10 U.S.C. 2321  and implementing DFARS clauses requiring dispute of HeS's 2010 assertion of restricted rights on the 0128 Contract particularly where, as here, neither the Government nor ASMR ever timely disputed it (Doc  213, pp. 23, n. 1 & 28-30).

6. Whether it was error for the lower court to not find the Government and ASMR exceeded their license in HeS's restricted code and that such was a breach of contract.

7. On the Copyright claims, whether it was improper to impute knowledge or willful blindness where such knowledge was hotly contested and refuted in detail under the *Palatium Care* factors (Doc 213, pp. 31-34 & 40-42)

   a. Whether the lower court erred when it imputed legal knowledge simply because it believed Mr. Greene should have legal assistance for his application, even though he did not. Doc 213, p. 42.

8. Whether snippets of irrelevant and immaterial code being  inaccurate is not dipositive so long as the key baseline code being claimed that produced the functionalities at issue is there and is accurate.  Doc 213, pp. 38-40

   a. Whether the lower court erred by focusing upon irrelevant portions of code and not reviewing the code being claimed.

   b. Whether the lower court imposed an unreasonably high standard after *Unicolors*.  Doc. 213, p. 40.

9. Whether it violated due process to disallow HeS the opportunity to correct its deposit copy after it had been provided the development environment late in discovery (Oct 2020) that ASM had physically stolen and secreted away.  Doc 213, pp. 36-38 & 44.

   a. Whether it was an error for the lower court to not allow narrowing or supplementation of claims on grounds the Copyright Office would have allowed.  Doc 213, p. 44.

10. Whether it was error for the lower court, after assuming a valid registration and in the alternative, to enter summary judgment on copyrightability where there was no contrary proof of that from either the Government or ASMR (or their experts)?

    a. Whether it was improper to exclude HeS's expert using the foregoing erroneous standard to shift the burden of proof to HeS and improperly apply the AFC test?

11. Whether it was error for the lower court to ignore contemporaneous and litigation admissions that the baseline code claimed belonged to HeS and was part of ROVR, and instead require the AFC test and a certain type of expert testimony. Doc 213, pp. 31-33 & 46-47.

   a. Whether the lower court erred in excluding HeS's expert and set an improperly high bar by not reviewing other corroborating evidence of her opinion, including the fact that Defendants contemporaneously admitted the baseline code was present and their expert never claimed it was NOT present.

12. Whether this a proper case for the application of the unclean hands doctrine and equitable estoppel, including ASMR's out of time answer amendments and late filings and bad-faith approach to HeS's claimed code, and whether it was error for the lower to not apply it.

## STATEMENT OF THE CASE

This case is about the Government conspiring with a big company to steal the intellectual property of a small business, specifically an Electronic Health Record ("EHR"), pertinent portions of which were developed at private expense by HEALTHeSTATE, LLC ("HeS") in a period leading up to the latter part of 2010, over which HeS properly asserted restricted rights to the Government, and then ASMR and HeS used in conjunction with to develop the veterinary EHR currently in use by the Department of Defense ("DOD") since 2014, namely the Remote Online Veterinary Record ("ROVR"). Appx1839. After that occurred, ASMR and the Government decided they had no more use for HeS. There is no real dispute about this, and there is no rebuttal expert report that counters the conspirators' admissions about it.

Instead, the lower court accepted the invitation by the conspirators to forget about this critical fact and elevate form over substance to defeat this claim, despite recent Supreme Court precedent to avoid doing just that. The decision below makes a mockery of statutory and DFARS policy towards subcontractors' rights in technical data. Section 3771 of Title 10, United States Code, "provides subcontractors at all tiers the same

protection for their rights in data as is provided to prime contractors." 48 C.F.R. § 227.7103-15. Moreover, 10 U.S.C. § 231 (now Section 3782) "permits a subcontractor to transact directly with the Government matters relating to the validation of its asserted restrictions on the Government's rights to use or disclose technical data." *Id.* Yet, the DoD admitted in its deposition that it never reached out to HeS at all, even when HeS complained or asserted its rights, choosing instead to deal only with ASMR, its prime contractor. Appx515

To accomplish this, the lower court avoided any semblance of due process by blocking HeS from correcting any unintentional immaterial errors. Even worse, the lower court did its best to misconstrue or simply ignore pertinent legal precedent and evidence, all to justify the theft of software, which was the only asset of this small business at issue. Worst of all, the trial court used procedural trifles to avoid the substance of the case entirely, construed all disputed facts in favor of the Government and ASMR contrary to summary judgment precedent, and then applied either incorrect or clearly skewed interpretations of the law to rule for the Government and ASMR. Finally, the lower court allowed the Government and ASMR to do and boast about what DFARS policy

expressly prohibits, specifically, "require[ing] contractors to have their subcontractors or suppliers at any tier relinquish rights in technical data to the contractor, a higher tier subcontractor, or to the Government, as a condition for award of any contract, subcontract, purchase order, or similar instrument." 48 C.F.R. § 227.7103-15. The lesson here for the Government and its largest contractors is to go ahead and conspire to steal: the courts will help such large contractors make it as expensive and complicated as possible for smaller subcontractors to enforce their rights, and even if the smaller claimants are ultimately right on the merits, will ensure the merits of their claim are never heard.

## I.     Procedural History

The lower court summarized much of the procedural history in its decision below. Appx2417-2421. However, there are a few aspects we emphasize here. HeS filed this action in January 2018, asserting a copyright infringement claim related to the unlicensed use of its software code by the Government and ASMR. The Government filed a Motion to Dismiss because HeS had not yet registered the software code at issue on February 28, 2018. Over the following two weeks, Mr. Barry Greene, CEO of HeS, conferred with the United States Copyright Office

("USCO") and sent what he believed to be compliant versions of the software code at issue. Appx5-155. This was Mr. Greene's first go at this, and he did it in a very short time without advice or assistance from counsel and without technology capable of allowing him to view the code he was submitting. Appx1274, ¶ 4. The USCO issued the two certificates of registration at issue on March 15, 2018. Appx5-155 & Appx1280-1287. Thereafter, HeS filed both an Opposition to the Government's Motion to Dismiss and an Amended Complaint in March 2018, which this the operative complaint in this matter. Appx5-155. In its subsequent Motion to Dismiss, the Government did not raise any issues related to whether HeS's claim expressed a sum certain or if its copyright registration was compliant. Instead, the Government alleged it could not be held liable because a third party, ASMR, was the infringer. As Senior Judge Hodges wrote at the time, because HeS alleged that the Government continued to use, install, modify, and authorize others to use its software source code in ways that infringed HeS's exclusive rights, and exceeded its term-limited license, which expired on May 7, 2014, this was sufficient for both copyright infringement and breach of contract. Appx158-166, pp. 6-8 (citing

Appx5-155, ¶¶ 4-5)).  At that point in the litigation, the Government invited ASMR to defend it, and after ASMR entered the case in October 2019, it proceeded to file a series of motions that are largely irrelevant to this appeal.  Appx167-71 & Appx172-333.  The lower court stayed the case at Appellee's request pending resolution of ASMR's Motion, which was ultimately denied by this Court; thereafter, the lower court allowed discovery to proceed in October 2020.  Appx334-337 & Appx338-339.  Discovery closed December 1, 2021.  Appx340-341.

Following the close of fact and expert discovery in December 2021, the parties conducted motion practice.  Prior to filing its reply on the copyright motion, on June 3, 2022, the USCO received Plaintiff's applications for supplementary registration to **change the year of completion and date of publication for each registration and limit its claims by excluding previously published computer programs.**  Appx 2206 through Appx2218; Appx2315, p. 3.  This is exactly the type of supplementation the USCO said it <u>would</u> allow, and HeS so advised the lower court.  *Accord* Appx2319 (quoting Appx2317).  The USCO stayed its consideration of Plaintiff's supplementary registration applications due to the current litigation.  Appx2316.  On

September 6, 2022, following the receipt of the Register's response to the Court's referral order, Defendants cross-moved for summary judgment on the copyright infringement claim limited to the question of whether Plaintiff's copyright registrations are valid. Appx2332-2351. Plaintiff filed its opposition on September 20, 2022. Appx2352-2371. Plaintiff also requested that the lower court allow the USCO's consideration of the supplementary registration and deny ASMR's opposed Motion out of time alleging invalidity, which the lower court denied. Appx2181-2314, Appx2321-2331 & Appx2375-2387.

Separately, the parties filed numerous competing motions to exclude expert testimony, including, as relevant to this opinion, Defendants' Motion to Exclude Dr. Johnette Hassell's expert opinions, which HeS opposed. Appx2181-2314. HeS also properly asserted at oral argument that expert testimony was not required for HeS to prove copyright infringement. Appx2541-2544. The lower court decided that the Summary Judgment Motions rendered moot the parties' other motions to exclude, but in doing so improperly shifted the burden of proof to HeS and imputed a standard that is not present in the law, it excluded her reports, and then used that sole basis as alternative justification to

*sua sponte* to grant summary judgment. Appx2456, n. 15. The lower court later entered judgment for Defendants and this appeal followed. Appx2409 & Appx2410-2469.

## II.   Statement of Facts

The crux of this case has always been that HeS asserted restricted rights to the Government over specific portions of HeS's software code it had developed solely at private expense)—restricted code which still exists in the ROVR code at issue—on June 8, 2010 (Appx5-155). Appx5-155, ¶ 4 & Appx16-19. HeS asserted this pursuant to Contract No. W911QY-09-C-0128 (Appx5-155, ¶ 4 (citing Appx16-19, Appx39 & Appx148-155). HeS also pled and continued to reassert throughout the litigation below that the time for any Government claim to the contrary had now passed. *Accord* Appx1-4. The lower court never addressed this argument (Appx2404-2405, & Appx2410-2469, *passim*). The last clear expression between ASMR and HeS about their respective rights, and prior to any dispute, was on August 21, 2012, and affirmed that HeS owned the Baseline Code and that it was a commercial product. **Appx1831.**

After both the Government and ASMR repudiated HeS's software rights and its contracts in 2014, HeS sought to stop the misuse of its Baseline Code in a letter to the Government dated October 1, 2014 (Appx701). In a series of correspondence, HeS made its position clear that it was owed contractual compensation for any use of its Baseline Code (Appx707 & Appx716; *see also* Appx745). The minimum 25% formula times future contract revenue using the Baseline Code contained in the subcontract was part of the attachments of the February 2015 letter, and that such relief was requested. Appx707 & Appx716. Yet, despite being repeatedly informed by both HeS and ASMR that HeS was the owner of the Baseline Code contained in ROVR, the Government required ASMR to deliver the source code on threat of termination for default in 2019, a demand with which ASMR complied. Appx1834, Appx 1844, Appx 1860, Appx1853 & Appx1857.

With respect to copyright matters, during oral argument, undersigned counsel made clear that the material portion of the code upon which summary judgment was sought was "those aspects that were asserted…in the restricted rights assertion" and in the release notes that defined the functional aspects of the code base. Appx2540-2541;

Appx2168; Appx1936; and Appx2135-2165. All the parties knew and stipulated that HeS's Baseline Code contained the commercial functional aspects over which HeS had asserted restricted rights; this was also confirmed in the deposition of the DOD.[1] Appx1824-1826; Appx1948& Appx1972; Appx2046-2133. The lower court's opinion makes clear that it did not limit its consideration to the pertinent portions of the code and considered numerous irrelevant aspects to reach its decision. Appx2410-2469.

On June 8, 2010, HeS asserted restricted rights over certain aspects of its software code in a letter to then Contracting Officer ("KO") Darlene Rideout. Appx2043-2045 (noting development of "portions of the software entirely at private expense"). This letter asserted restricted rights in HeS's software and modules that were created entirely at private expense, which included the following modules: the HL7 Loader, Task Management – Framework, Faxing System, Pharmacy Management, and Import/Export Template. *Id.*; *also* 48 C.F.R. §

---

[1] The lower court refused to consider these admissions of copying because it shifted the burden of proof to HeS and said that only an expert could confirm it, even though there is no dispute it is readable code. Appx2467. HeS disagreed with this position during the hearing below in this matter and explained why. Appx2541-2547.

227.7103-15. The Government did not respond or object to HeS's assertion of restricted rights in segregable portions of its software at this or any other time prior to six years from payment in October 2010 (Appx2046-2134), so HeS entered this subcontract with ASMR believing the restricted rights asserted with respect to those modules control. Appx1-4. The Government negotiated no contrary license with HeS. Appx1966-1968, Appx1972, & Appx1976. These functionalities form the critical part of the baseline, without which the code could not function as either EHR or commercial software. Appx1356-1358

All the foregoing appeared in the ROVR code initially and as it was delivered by ASMR in Build 340, as both HeS's experts, Dr. Hassell and Mr. Kreitzer, confirmed, based in part on their own review as well as the side-by-side comparison done by Mr. Greene of HeS Baseline and ROVR Code, but not in the HealtheForces ("HeF") nonfunctional code. *Compare* Appx1277¶ 10 & Appx1312-1319 (actual code excerpts omitted) *with* Appx2033-2035& Appx1354-1364; *see also* Appx1864, Appx1876-1878, Appx1880-1882, Appx1898 & Appx1948. In her report, Dr. Hassell also pointed out that the Government and ASMR's expert "did nothing to rebut [the] conclusion that the modular functionalities in HealtheState

and ROVR are <u>not</u> derivative of HealtheForces," Appx1898. Dr. Hassell also stated in her final report that the "Abstraction, Filtration, and Comparison test would not have been necessary…because of the comparable implementations of the modular functionalities in each of the HealtheState, ROVR, and the Government's code." Appx1899. As expressed in her initial report, Dr. Hassell confirmed that she searched "the entire corpus" of all pertinent code to reach her conclusions that the code at issue was substantially similar. Appx1864, ¶ 9; Appx2541-2545& Appx2605. Mr. Kreizer confirmed this as well. Appx1352.

## III.  Argument

### A.  <u>Standard of Review</u>

This Court "review[s] a grant of summary judgment by the Court of Federal Claims de novo." *FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018). Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law. *Id.*; RCFC 56(a). At the summary judgment stage, this Court views the facts supported by evidence, as well as all inferences drawn therefrom, in the light most favorable to the non-moving party. *United States v. Diebold,*

369 U.S. 654, 655 (1962). A non-moving party can defeat summary judgment by identifying an "evidentiary conflict created on the record" as to any material issue of fact. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).

This Court reviews questions of statutory interpretation de novo. *Mohsenzadeh v. Lee*, 790 F.3d 1377, 1381 (Fed. Cir. 2015) (citing *AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1353 (Fed. Cir. 2007)). If two statutory provisions are "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133-34, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)) (internal quotation marks omitted). This Court also reviews legal conclusions by the Court of Federal Claims de novo and its factual findings for clear error. *Gaylord v. U.S.,* 777 F.3d 1363, 1367 (Fed.Cir.2015); *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

When addressing questions of copyright law, this Court applies the law which would be applied by the relevant regional circuit—here, the

Federal Circuit. *SAS Institute, Inc. v. World Programming Ltd.,* 64 F.4th 1319, 1329 (Fed.Cir.2023). Copyrightability, which includes both issues of validity and protectability, is generally treated as a legal issue, or as a legal issue that may involve subsidiary factual findings. *Id.* (citing *Oracle America, Inc. v. Google, Inc.*, 750 F.3d 1139, 1353 n.3 (collecting cases)). Treating copyrightability as a question of law which this Court reviews de novo is consistent with case law. *Id.* (citing *Eng'g Dynamics*, 26 F.3d at 1340–41; *see also Oracle*, 750 F.3d at 1353 n.3; *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 34 & n.5 (1st Cir. 2001); *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996); *SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1022 (E.D. Tex. 2020) (citing NIMMER ON COPYRIGHT § 12.10)). To be clear, whether copyright infringement has occurred is a factual determination that generally can be reached only after the legal determination of copyrightability has been made.

Both as an issue of contract and copyright, other Courts have similarly recognized the preclusion of use or other actions with respect to intellectual property once a license agreement for same, as here, expires. See *Gaffney v. Muhammad Ali Enterprises, LLC*, 2022 WL 4095953

(S.D.N.Y., September 7, 2022), *7 ("Ostensibly, the Agreement precluded postings [and use] on social media of [the licensor's intellectual property] once it expired.").

## B.    <u>Breach of Contract Claims</u>

### 1.  **HeS's Claim Was Sufficient**

The issue HeS has with the lower court on this matter of the efficacy of its claim below is that it cited to *Cont. Cleaning Maint. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987) and *Modeer v. United States*, 68 Fed.Cl. 131, 137 (2005), aff'd, 183 F. App'x 975, 977 (Fed. Cir. 2006), but then neglects to either properly apply the guidance in these cases or properly consider the claim correspondence at issue.   The lower court aptly summarized these cases as follows:  "While there is no requirement that a claim 'be submitted in any particular form or use any particular wording,' it must provide 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'  Such requirement is met 'if the contracting officer can determine the amount by a simple mathematical calculation."  Appx2425-2426(citing *Contr. Cleaning Maint.*, 811 F.2d at 592, *Modeer*, 68 Fed.Cl. at 137, & 41 U.S.C. § 7103(b)).  What the lower court did not do, however,

was apply these cases and other applicable guidance from this Court to the actual claim correspondence and their attachments.

Specifically, on October 1, 2014, a day after ASMR was awarded the follow-on ROVR contract (and two weeks after ASMR decided to move on from HeS and use its code anyway – Appx420), HeS sent a letter to the Government challenging ASMR and the Government's rights to HeS's baseline code and the assertion of Government Purpose Rights ("GPR") in it; this was a proper claim requesting adjustment of contract rights. Appx735. *Accord* Appx1-4 ("If a claim pertaining to the validity of the asserted restriction is submitted in writing to a contracting officer by a contractor or subcontractor at any tier, such claim shall be considered a claim within the meaning of the Contract Disputes Act of 1978 (41 U.S.C. § 601 et seq.).").[2] The KO provided a preliminary response in late January

---

[2] While this statute was repealed, effective January 1, 2021, by Pub.L. 116-283, Div. A, Title XVIII, § 1881(a) and replaced with 10 U.S.C. 3782, Section 2321 was in force and implemented by 48 C.F.R. § 227.7103-13 when the 0128 Contract was awarded to HeS on September 2, 2009 (Appx437), when the assertion of restricted rights by HeS was made on June 10, 2010 (Appx470-473), and when both the three-year limitation on challenges and the six-year general statute of limitations expired. As this Court's predecessor stated, "[i]t is beyond doubt that '[t]he law in effect when a Government contract is made becomes part of the contract.'" *Accord Jackson v. United States,* 216 Ct.Cl. 25, 573 F.2d 1189, 1195 (Ct.Cl.1978).

2015, acknowledging receipt of HeS's code from ASMR on May 27, 2014, and asked for a further response, which it asked include a discussion of the underlying subcontracts between ASMR and HeS. *Id.*, p. 795. In this same correspondence, the KO stated that "[t]he Government has reasonable grounds to believe that assertions made with reference to the ROVR deliverables [by ASMR] are not valid." Appx739.

On February 9, 2015, HeS provided its response; although the certification was later amended (Appx745-746), this document contained all that is necessary to constitute a proper claim, even outside of 2321(h).

> I previously outlined HeS' ownership rights in a letter to Timothy Haight dated 3 November 2014, and I provided him with copies of the contracts between ASMR and HeS concerning the source code. These contracts are a Subcontract between ASMR and HeS dated 4 October 2012, Task Order No. 1, dated 4 October 2012, and Modification No. 1, to the Subcontract dated 19 December 2013. The letter to Mr. Haight and the contract documents previously provided are attached here as **Exhibits 1-4**. I will not repeat the substance of the letter; however, I will point out that all of the documents make clear that HeS granted ASMR only the right to use the baseline software for certain purposes and for periods of time set forth in the contract documents; each of these documents contain express statements that HeS remains sole owner of the baseline source code. The contract terms ended as of May 7, 2014, and which ASMR no longer had any right to use

the code. The sole-source contract was awarded to ASMR [by the Government] after May 7, 2014.

Appx716. In addition to providing answers to the KO's requests for information, Plaintiff's letter included two requests of the CO: (1) that she terminate ASM's sole-source contract and award it to Plaintiff, and (2) that the Government "compensate [Plaintiff] for the use of its code from 7 May 2014 forward." *Id*. at 652 (Ex. 62).

The lower court also found, and no one appealed, that "[t]he Government has never responded to these letters." Appx2416. More than three years have passed since HeS's software was delivered to the Government on May 27, 2014 and HeS's use restriction for its software was made to the Government and ASMR in September-October 1, 2014, and February 8, 2015. Appx597, Appx605 & Appx610; Appx 2414. Indeed, that time had passed as of the time HeS's operative complaint was filed on March 16, 2018 (Appx5-155), long before ASMR entered this lawsuit on October 9, 2019 and began spinning and changing the facts to suit its new litigation position.[3] Appx2418.

---

[3] Let it not be lost on anyone that ASMR's entrance into this case was not the least bit altruistic. DFARS policy clearly requires ASMR to "[i]demnify the Government from any liability to data owners or licensors resulting from, or as a consequence of, a release or disclosure of technical

For its part, ASMR's attitude at the time was that it had effectively laundered HeS's code by delivering it to the Government, and using what the Government provided them access to going forward. Appx418-429, p. 10. This not only ignored that the Government was "bound by [HES's] restriction" as Section 2321(h)(2) requires, it also ignored that ASMR's use license had expired because the subcontract with HeS allowing its use ended on May 7, 2014, and further provided that Plaintiff "will continue to have sole ownership (IP) to the HeS baseline software since the changes being made are part of the commercial HeS baseline product." Appx2414; Appx722-723. Ironically, during this litigation, ASMR admitted the validity of HeS's restriction to the Government as late as May 10, 2019, when it said to the KO "we believe the following to be true [with respect to the ROVR source code]:…because HealtheState retains ownership of the code base, ASM is unable to deliver uncompiled code per your request." Appx1834.

Section 2321(h) is not the only basis upon which HeS's claim can be "considered a claim" pursuant to the Contract Disputes Act ("CDA"). It

---

data made by the data repository contractor or its officers, employees, agents, or representatives." *Accord* 48 C.F.R. § 227.7108(a)(6).

is also a valid claim under the CDA itself. These subcontract documents attached to the claim provided the precise answers to the sum certain being claimed as of the February 9, 2015 claim; this was in terms of the maintenance fee contained in Task Order No. 1, which, adding the four payments together, totaled $439,920.00. Because HeS did not know what the Government would choose, this maintenance fee was certain and supported by the attachments to the claim. While the Government never answered this claim, even after it was certified in 2017[4], the Government obviously chose to continue with ASMR and exclude HeS from ROVR work, which continues to this day. Appx777. At least at the time discovery closed in this case, ASMR disclosed that it had been paid ███████████ (Appx795), 25% of which is ███████████. Yet, the Government still seems to indicate that this formula is too hard. While HeS did not know the true number at the time of its claim, both ASMR

---

[4]    HeS also asserted alternatively below that even if the sum were considered defective, it should still be able to cure this issue pursuant to 41 U.S.C. § 7103(b)(3). The lower court flatly rejected this for jurisdictional reasons, even though this Court in *ECC* made clear that because this rule is "nonjurisdictional," such jurisdictional bars do not apply in the same way. *Compare* Appx2430, n. 6 *with ECC Int'l Constructors,* 79 F.4th at 1379. Even if it was required, which it was not, the lower court should have allowed it.

and the Government did.  Consequently, this latter sum was reducible to a simple mathematical calculation of the 25% minimum of the "new ROVR work."  Appx723.  To get this number, all the Government had to do was multiply 25% times the value of the contracts awarded to ASMR requiring the use of the ROVR Code.  This is certainly "adequate notice" of the basis and amount of the claim.  As the court ruled in *Little River Lumber v. United States,* 21 Cl.Ct. 527, the application of a contract adjustment requiring either simple addition listed in one subcontract task order to determine the software maintenance fee or the application of a minimum percentage to the value of multiple ROVR contracts and modifications known by the Government  is not a failure to state a sum certain; rather, "the amount of the claim would be easily determinable by the contracting officer since it would be a matter of simple arithmetic." *Id.* at 535.  The Government has certainly always been aware of which contracts are at issue, as its March 17, 2020 J&A reflects.  **Appx 777 &,** Appx795.

Since at least 1984, it has been the law in this Circuit that a claim may consist of multiple correspondence, which must be "read in [their] entirety, including referenced documents."  *U.S. v. General Electric*

*Corp.,* 7278 F.2d 1567, 1569 (Fed.Cir.1984). As this Court has explained previously, the definition of "claim" should be read broadly. *Accord Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1312 (Fed.Cir.2011). The CDA does not define "claim," and while this Court looks to the Federal Acquisition Regulation ("FAR") as a guide, it should not be used to frustrate the purposes of the statute, which is merely notice in this context. *See Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). In the FAR, "claim…means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. *Accord* 48 CFR § 2.101 ("Definitions"). As this language indicates, a CDA claim can seek monetary or non-monetary relief. *Todd Constr.*, 656 F.3d at 1311.

Not only is either simple addition or a formula enough for a sum certain, but such relief can be expressed or implied in this context in a string of correspondence, particularly after *ECC International Constructors, LLC v. Secretary of the Army*, 79 F.4th 1364 (Fed.Cir.2023); *See also Zafer Construction Co. v. U.S.*, 40 F.3d 1365 (2022). In *ECC*

*International Constructors,* the Court notes that "[w]e have previously observed that although the requirement is mandatory, '[t]he law does not require that a CDA claim identify a precise monetary amount to state a 'sum certain.'" *Id.* at n. 9 (citing *Creative Mgmt. Services, LLC v. United States*, 989 F.3d 955, 962 (Fed. Cir. 2021). As demonstrated above, HeS's claim contained non-monetary relief coupled with a sum certain reducible to a "simple mathematical calculation" as the law contemplates. No more was required.

In the decision below, the lower court took umbrage that HeS's damages changed over time. For its part, the lower court took pains to address what was later said about the claim. Appx2429-2430. This Court has long held, however, that the simple fact that damages will continue to accrue neither tolls the claim nor requires a new claim as such occurs. *Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed.Cir. 1984). It is also a red herring in this instance since the Government never bothered to fully analyze the issue itself enough to issue a final decision. It is also incumbent upon a contractor (or the Government for that matter) to address claims as they accrue or risk passage of the statute of limitations. *Electric Boat Corp. v. Secretary of Navy,* 958 F.3d 1372, 1376

(Fed.Cir.2020).  Moreover, it is critical to understand what could have been known by the contractor at the time its claim was submitted, rather than how it may change over time, as such "distort[s] the appeal procedure erected in the Contract Disputes Act."  *Accord Glenn v. United States*, 858 F.2d 1577, 1580-1581 (Fed.Cir.1988).  In this case, HeS had no way of knowing what ASMR had been paid for ROVR at the time it filed its claim.  The maintenance fee and the formula for future ROVR work contained in the subcontract documents attached to its claim was all it had, and that was enough.

## 2. The Government and ASMR Had No License Over HeS's Baseline Code and Were Estopped From Challenge

As Senior Judge Hodges wrote in his denial of the Government's Second Motion to Dismiss (Appx163), "[a] license is a contract, the repudiation of which can give rise to termination of the license and an action for breach."  Appx163 (citing *Dow Chemical Co. v. United States*, 226 F.3d 1334, 1346 (Fed.Cir.2000). Copyright licenses "are assumed to prohibit any use not authorized."  *id.* (citing *S.O.S, Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989).  "The government shall have only the rights specified in the license under which commercial computer software or commercial computer software documentation was obtained." 48 CFR

§ 227.7202-3(a). If the Government desires greater rights, it "must negotiate with the contractor to determine if there are acceptable terms for transferring such rights." 48 CFR § 227.7202-3(b). Any "government[] rights to use, modify, reproduce, release, perform, display, or disclose computer software or computer software documentation shall be identified in a license agreement." 48 CFR § 227.7202-4(a); *see also* 48 CFR § 52.227-19.

The Government never obtained any new license from HeS regarding the restricted rights asserted in HeS's Baseline Code. Appx597; Appx722; Appx1948; and Appx1938-1977, Appx1972 & Appx1975-1976. The ROVR code the Government and ASMR obtained from HeS–and continue to use–was literally copied and is present in all versions of the ROVR software in use by the Government and ASMR today, the modules named in said restricted rights are present in the ROVR code, several of said modules are critical to the function of the ROVR system in use by the Government today, and the Government was always aware of this. Appx728-731; Appx771-772 & Appx772; Appx1948; Appx476; Appx747-761. No expert is needed to demonstrate this in the face of these admissions. As other Circuits have held, if the Government

asserts the existence of a license as an affirmative defense, it has the "burden of proving [its] existence." *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 40 (1st Cir. 2003). In this case, the lower court improperly shifted the burden of proving its license to HeS, even where the statutory presumptions designed to protect HeS applied and nothing other than term-limited commercial clauses with clearly dated periods-of-performance were flowed down to it in the ROVR subcontracts.

The lower court spent an inordinate amount of time considering whether the Government and HeS <u>agreed</u> to the end user license agreement ("EULA") in HeS's Baseline Code present in ROVR. This wasteful exercise completely missed the point of HeS's breach of contract claims. As undersigned counsel explained during oral argument below, the restricted rights license in HeS's Baseline Code which proceeded from the 0128 Contract, and was never superseded, was "not just simply a waiver, or it's not just simply something that occurs by operation of law. It's a stronger argument than that because it arises in an express contract context, and then it carries forward because the EULA controls at that point. If [the Government and ASMR] exceeded the license [as

they did here] just like in the *Kofax* case or in the *Chromalloy* case, what takes over is the EULA. So it's – if you violate or if you exceed the license, then you're bound by what the commercial terms are." Appx2503. Instead, the lower court spent its time considering whether a person with authority clicked on the EULA and totally missed the point. The point, as Senior Judge Hodges wrote years before, was specifically whether ASMR and the Government exceeded HeS's commercial license and its restricted rights, or obtained a new license. Appx5-155 & Appx158-166.

As Senior Judge Hodges noted, the only license provisions applicable to HeS's COTS product in this context were DFARS 227.7202-4(a) and FAR 52.227-19, both of which require the Government to negotiate an express license to use COTS software (Appx158-166, citing Appx94) Appx5-155; no other clauses were flowed down to HeS in the ROVR contract. Appx2236. Because no license existed that had not expired as of May 7, 2014, and the Government has continued to use, install, and disclose HeS's software source code, the Government stands in breach of its limited license rights. The lower court did not consider the foregoing in its summary judgment and neither the Government nor ASMR proved otherwise. Nor was there any reason for the lower court

to read Section 2321 and its implementing clauses to not have the effect they obviously state. *E.g., Boeing Co. v. Sec'y of the Air Force,* 983 F.3d 1321, 1329 (Subsection 7013(f) "authorizes the use of certain restrictive markings" ***for the purpose of restricting the government's rights***.") (emphasis supplied); *see also Raytheon Co. v. United States*, 146 Fed.Cl. 469, 471-472 (2020).

HeS's asserted restricted rights in specific portions of the Baseline Code pursuant to DFARS 252.227-7014(e)(3) on Contract No. W911QY-09-C-0128 in 2010 (Appx437 & Appx455, Appx470-473; *see also* Appx35, n. 2) ("0128 Contract), as opposed to the inoperative HeF (Appx438). The 0128 Contract ended, and final payment was made by the Government to HeS in October of that year (Appx606Appx612). Thus, HeS's restricted rights assertion was never challenged within the six-year statute of limitations for government claims, much less the three -year limitation contained in the applicable statute and clause, so the commercial presumptions stand for that code. Appx1-4, as implemented by 48 C.F.R. § 252.227-7019 (June 1985) (Appx 2393-2401 & Appx2402-2408; Appx777 & Appx455), so, again, the assertion stands. Nor has there been any proof that the Government or ASMR had a license to use HeS's Baseline

Code beyond May 7, 2014, without any further compensation to HeS. Appx725. The Government accepted HeS's Baseline Code knowing its assertions of commerciality and the bases for it as represented by ASMR at the time and never negotiated anything different with HeS. Appx 771-772 & Appx777; Appx515, Appx597 & Appx608-674.[5] Thus, such was unauthorized and breached the restricted commercial license. *Kofax v. U.S.,* No. 11-449C, 2013 WL 4040870 (Fed. Cl., Aug. 8, 2013).

---

[5] The unclean hands of ASMR permeate the entire case below, and courts have a wide range of discretion in refusing to aid the litigant with "unclean hands." *4DD Holdings, LLC v. United States,* 169 Fed.Cl. 164, 179 (2023) (citing *Mabus v. Gen. Dynamics C4 Sys., Inc.,* 633 F.3d at 1359). The lower court's statement in an earlier ruling that "HeS does not seriously contest that ASM brings its motion in good faith." Appx3350. Indeed, ASMR was first improperly allowed to amend its answer out of time to assert a defense it knew about and relied upon in 2014, what HeS refers to as its "laundering" argument. *Compare* Appx342-350 *with* ECF Appx420. In that same decision, the lower court spoke of due process and that Mr. Greene's averments…"will likely require a fact intensive determination on the merits," a hearing it later improperly refused to HeS. *Compare* Appx2179-2180 *with* Appx2441-2447. Finally, the lower court allowed ASMR's Motion to claim copyright invalidity, with ASMR's full knowledge that it honed in on immaterial portions of code and was simply a way for ASMR to procedurally excuse both its and the Government's intentional breaches and infringements of HeS's code. As the *Unicolors* Court emphasized, and the Government emphasized in its briefing in that case, this was never the intent. Appx1267 & Appx1268-1270.

Contrary to what the Government and ASMR alleged below, this case is not "unlike ECC," as the Government did not object at the time and did not answer the claim in that way. *See* Appx762-768 – Graham Letter, JAN 2015. Thereafter, the Government and ASMR stayed silent on the claim for three years until this case was filed in 2018. The Government admits it did not challenge HeS's assertion of restricted rights in the Baseline Code, that later iterations are built upon HeS's Baseline Code, and that the Government did not seek HeS's permission to use or license HeS's Baseline Code further. Appx465-467, Appx484 & Appx597. In an attempt to elevate form over substance, Defendants filed several failed Motions to Dismiss prior to the one at issue, including a failed interlocutory appeal on one, and engaged in years of litigation including completion of discovery and depositions, and numerous discovery disputes. This culminated in ASMR employee Andy Baker finally providing access to the stolen HeS Baseline Code repository in October of 2021, just prior to the close of discovery, of the material that allowed HeS to once again access HeS's Baseline Code development environment, which it had been unable to do since 2014. It was the return of this stolen physical property ten months into Discovery that

informed Mr. Greene's supplemental filings to the Copyright Office. Such information had simply been unavailable to Mr. Greene until that time, as it was unavailable to HeS as it was unlawfully withheld by the Defendants.

The lower court simply ignored the real contract here. As HeS asserted at the hearing, this case is about the violation of the restricted rights assertion in 2010, which is a contractual breach. Also, as for the EULA, the problem with this argument is that the Government never negotiated ANY different rights with HeS, so it is left with acceptance of the restricted rights and commercial EULA terms. Appx388. Defendants are also incorrect when they say that the EULA is the backup to the restricted rights and not the other way around. This is because there is an express contract, not implied, based upon the 0128 Contract with the Navy in 2010 under which the restricted rights were asserted *Accord* Appx387, Appx394-396. While exceeding this license is a breach of contract as noted above, because there is no other negotiated license, the EULA (or commercial terms) are the default terms that apply. (Appx15.; *Accord* 48 CFR § 227.7202-3 & -4(c)-(d); Appx418-429, Appx430, Appx431, Appx432; Appx433; Appx1565; Appx1659-1678& Appx1679-

1696) unless the Government specifically negotiated a different license with HeS, which did not occur.  Appx515 & Appx597; Appx698; Appx773; and Appx1149.  *Accord* 48 CFR § 227.7013(b)(2).

Finally, as this Court in *ECC International Constructors* emphasized, "[i]f a party challenges a deficient sum certain after litigation has far progressed, however, that defense may be deemed forfeited."  *Id.,* 79 F.4th at 1380.  This case does not specifically define what such would entail, but this rule is obviously a form of equitable estoppel.  In this Court, equitable estoppel has previously required:  (1) misleading conduct, which may include not only statements and actions but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted.  *Accord Mabus v. Gen. Dynamics C4 Sys., Inc.*, 633 F.3d 1356, 1359 (Fed.Cir.2011).  All of these factors are present here.  There is certainly silence, lulling HeS into a false sense of security.  Indeed, the Government sat on its rights for years, never asserting it had no understanding of what HeS was seeking, all the while writing internal memos betraying its full understanding and expressing fear of the

liability. Even when the Government called ASMR in to protect it, both filed numerous other Motions and waited years after first a stay, and then a long and hard discovery period to let ASMR file the Motion for it. The argument was not one anyone needed to wait to file, as such was present from the beginning if at all, assuming of course that the Government cannot do simple math as HeS disputes above. The application of the *Mabus* factors is clear, as the silence was deafening for years, the lack of challenge and what that meant pursuant to Section 2321 was obvious for HeS's reliance, and the prejudice to HeS is clear as Appellees intentionally waited for the statute of limitations to pass. *Id.,* 633 F.3d at 1359. The lower court considered none of this, and that was an error.

### 3. The Government Exceeded and Breached Its License

In its decision on the breach of contract issue, whether it be implied or express or through ratification, the lower court (at the suggestion of the Government and ASMR) improperly and unnecessarily conflated the EULA in HeS's software with the agreed terms HeS sought to enforce. Appx2434-2439. In an effort to disregard the actual real arguments

made, the lower court cites to provisions other than ,[6] 10 U.S.C. 2321,

does not address *Raytheon* and *Boeing* at all, ignores the limitations of

the license granted to the Government by HeS, and ultimately rests its

flawed analysis primarily on two odd aspects:  (1) that no Government

person with authority clicked on the EULA when accessing HeS's

software; and (2) that the Government's failure to respond to HeS's

assertion of restricted rights in relevant portions of its commercial

Baseline Code to the KO on June 10, 2010, operated as neither an

acceptance  nor a waiver.

There is no dispute that the Government never responded to HES's

June 10, 2010, letter to Darlene Rideout, the Navy's KO.  Appx597.

Moreover, Section 2321 in pertinent part plainly stated that any DOD

---

[6]     While this statute was repealed, effective January 1, 2021, by
Pub.L. 116-283, Div. A, Title XVIII, § 1881(a), it was in force when the
0128 Contract was awarded to HeS on September 2, 2009 (Appx470-473),
when the assertion of restricted rights by HeS was made on June 10, 2010
(Appx470-473), when both the three-year limitation on challenges and
the six-year general statute of limitations expired, and when both HeS
claims were filed and certified with the Government in 2014-2015 and
2017 and when this cause of action was asserted in the lower court in
2018.  As this Court's predecessor stated, "[i]t is beyond doubt that '[t]he
law in effect when a Government contract is made becomes part of the
contract.'"  *Accord Jackson v. United States,* 216 Ct.Cl. 25, 573 F.2d 1189,
1195 (1978).

challenge "to an asserted use or release restriction may not be made…after the end of the three (3) year period…beginning on the later of…the date on which final payment is made on the contract."  Appx1-4.  Pursuant to this statute, any timely challenge had to be asserted by the Government in writing.  Appx1-4.  The statute further provided that any assertion of data by a contractor or subcontractor is presumed to be developed solely at private expense unless such is timely shown to be demonstrably false.  Appx1-4.  The lower court simply did not consider and read Section 2321 in the statute book.

There is no dispute that the HeS Baseline Code at issue was never delivered to the Government in any form until May 27, 2014, and that this was only done by ASMR (not HeS – to date, HeS has <u>never</u> provided the Government HeS's baseline code) after its license to use HeS's code had expired.  Appx1844.  It was undisputed that the so-called code delivered by ASMR on May 27, 2014, was an executable disk, not the uncompiled source code, which the Government admitted it lost.  The lower court ignored the real contract here.  As HeS asserted at the hearing, this case is about the violation of the restricted rights assertion in 2010, which is a contractual breach.  Also, as for the EULA, the

problem with this argument is that the Government never negotiated ANY different rights with HeS, so it is left with acceptance of the restricted rights and commercial EULA terms. Appx388. As the facts demonstrate above, neither the Government nor ASMR had any license to use HeS's Baseline Code contained in ROVR after May 7, 2014. Consequently, the breach here is that both the Government and ASMR exceeded their license and breached HeS's 0128 Contract.

The lower court also got it wrong when it said that the EULA is the backup to the restricted rights and not the other way around. This is because there is an express contract, not implied, based upon the 0128 Contract with the Navy in 2010 under which the restricted rights were asserted. *Accord* Appx387, Appx394-396. While exceeding this license is a breach of contract as noted above, because there is no other negotiated license, the EULA (or commercial terms) are the default terms that apply. Appx1266. *Accord* 48 CFR § 227.7202-3 & -4(c)-(d). Finally, even assuming the HeS Baseline Code was not commercial software and the Government did have government purpose rights in HeF, and HeF was also a material part of the HeS Baseline Code, none of which is true, any such five-year rights would have expired at latest in 2011 (prior to HeS's

involvement in the ROVR contract) when the Air Force chose another option and eschewed any rights to HeF (Appx430, Appx431, Appx432; Appx433; Appx1565; Appx1659-1678 & Appx1679-1696) unless the Government specifically negotiated a different license with HeS, which did not occur. Appx515 & Appx597; Appx698; Appx773; and Appx1149. *Accord* 48 CFR § 227.7013(b)(2).

## C.   Copyright Infringement Claims

The lower court's decisions on the copyright claims proceeded from several obvious and incorrect assumptions asserted by both the Government and ASMR below. Appx2410-2469. Using ASMR's expert report as a tool, the lower court repeatedly focused on irrelevant portions of the code without ever having first considered that the Defendants admitted substantial copying of HeS's Baseline Code when they admitted its inclusion in all versions of ROVR currently in use by the Government. As a threshold matter, the same reasons recited above pursuant to Section 2321 that preclude the Government and ASMR's belated challenges of HeS's October 1, 2014, assertion of rights in its Baseline Code on contractual grounds, namely, the Government went three years

without any written challenge to HeS. *Accord* Appx1-4. It was an error for the lower court not to consider this.

The foregoing aside, "i]t is undisputed that computer programs … can be subject to copyright protection[.]" *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014). Courts have defined source code as "the spelled-out program commands **that humans can read**." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 533 (6th Cir.2004); *Oracle Am., Inc. v. Google Inc.*, 750 F.3d at 1355. Both source and object code "are consistently held protected by a copyright on the program." *Johnson Controls*, 886 F.2d at 1175; *see also Computer Associates Intern, Inc. v. Altai*, 982 F.2d 693, 702 ("It is now well settled that the literal elements of computer programs, i.e., their source and object codes, are the subject of copyright protection."). *Oracle Am., Inc. v. Google Inc.*, 750 F.3d at 1355. A copyright owner who creates an original work (but does not register it) and, as here, subsequently registers a derivative work based on that original work registers the elements in the original work that are included in the derivative work. *Accord Enterprise Management Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1056 (9th Cir. 2023).

Like a private party, the United States may be liable for copyright infringement. 28 U.S.C. § 1498(b). To prevail on its copyright infringement claim, HeS must allege and establish ownership of a valid copyright and copying by the Government. *Gaylord v. United States*, 595 F.3d 1364, 1372 (Fed. Cir. 2010). The language of the Copyright Act ("Act"), case law, and common sense support the proposition that the installation of software onto a computer results in 'copying' within the meaning of the Act. *Stenograph L.L.C. v. Bassard Assocs.*, Inc., 144 F.3d 96, 100 (D.C. Cir. 1998). "Copying is demonstrated when someone who has access to a copyrighted work uses material **substantially similar** to the copyrighted work in a manner which interferes [with an owner's exclusive rights of reproduction, preparation of derivative works, distribution, public performance and public display] as protected by 17 U.S.C. § 106." *Ford Motor Co. v. Summitt Motor Prods., Inc.*, 930 F.2d 277, 291 (3rd Cir. 1991) (emphasis added).

"[W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, … by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or

consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code[.]" *Accord* 28 U.S.C. § 1498(b). The statute "is more than a waiver of immunity and effects an assumption of liability by the government." *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, 583 F.3d 1371, 1375 (Fed. Cir. 2009) (citations omitted). Authorization and consent may be expressed or implied and need not appear on the face of a particular contract. *Id.*, 583 F.3d at 1377 (citations omitted). To trigger this liability, it is enough that the Government is a beneficiary of the infringement; the Government need not be the primary beneficiary. *Id.*, 583 F.3d at 1388.

Even if the Government operated under the innocent and erroneous belief that its conduct was authorized, it is still liable for infringement. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) (citing 4 Nimmer on Copyright § 13.08(B)(1)). A "licensee infringes the owner's copyright if its use exceeds the scope of its license." *Storage*

*Technology Corp. v. Custom Hardware Eng'g,* 421 F.3d 1307, 1316 (Fed.Cir.2005) (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989)); *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008); 3 Nimmer on Copyright § 10.15 (2017) ("when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement"). A "licensee infringes the owner's copyright if its use exceeds the scope of its license." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989); *see also Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008); 3 Nimmer on Copyright § 10.15 (2017) ("when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement"). This limitation also applies to licenses the Government obtains from third parties because such third parties "could resell only what is acquired," nothing more. *Kofax, Inc. v. United States*, 2013 WL 4040870, *4 (Fed. Cl.) (August 8, 2013) (citing *Rhone Poulenc Agro, S.A. v DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002); *Monge v. Maya Magazines, Inc.*, 688 F.3d at 1170 (citing 4 Nimmer on Copyright § 13.08(B)(1)).

1. **HeS's Registration Is Valid Because There Was No Knowing Material Inaccuracy**

45

The pertinent inquiry on the issue of validity is whether Mr. Greene himself, not HeS as a whole, knowingly misrepresented material portions of the code over which rights are claimed. Appx2575-2586. As was also made clear below, Mr. Greene had no legal background, did the registration in a very short time following the instructions he was given by the USCO, and none of the factual background which would render any alleged inaccuracies known. *Id.* In its briefing below, HeS refuted any such allegations that any alleged inaccuracies were either material or knowing. Appx2396-2400.

What is truly frustrating about this case is that the Government argued for, and the lower court required, standards from HeS, a small business contractor, that it did not impose on either the Government or ASMR, now Accenture, one of the largest off-shore government contractors at present. ASMR agreed with HeS's assertion of commerciality and ownership in its software, until it became inconvenient. The Government did not care the slightest for any assertion of rights by HeS, preferring instead to only deal with its prime, even though clear statute and policy dictated otherwise. The Government and ASMR went into this case knowing how they would

ultimately recharacterize the law and the facts, and only when they felt as if they had bled HeS to the point they wanted, did they seek to destroy them by elevating a ministerial issue into one of paramount importance. Sadly, the lower court bought this hook, line, and sinker. This is not the case where the policy behind the Act as interpreted below protects an innocent infringer from harm. It is a new defense, where the Government can take solace in using a large contractor to steal intellectual property from a small contractor in a manner contrary to express policy with full knowledge that the courts will protect their deceit. We have great faith this Court will correct this.

Ironically, the foregoing opportunistic tripe is squarely at odds with what the Government argued before the *Unicolors* Court. In its amicus curiae brief to the Supreme Court, the Government argued that the appellate court's reasoning was flawed, recognizing that copyright registrations largely require the application of law to fact, which requires an understanding of both relevant law and applicable fact. Appx1268. The Government argued that an inquiry that looks only at whether an applicant had knowledge of the relevant facts is not only insufficient, but adverse to the reading of other Act provisions and contrary to the

legislative intent of preserving the validity of registrations. Appx1269-1270. The Government argued that registrants are often "unschooled in copyright law" and procedure, so an error of law is merely an inadvertent error and an attempt to exploit same represents an "infringers' attempt to exploit loopholes stemming from registration requirements." Appx1270. The Government argued that a registrant's mistake of law negated any allegation that it knew the information it supplied was inaccurate, so the registration is valid. Appx1268. Indeed, an applicant "who believed that the information on her application was accurate cannot reasonably be said to have acted 'with knowledge that it was inaccurate.'" Appx1272. Apparently, the foregoing no longer suits the Government when its own infringement is at hand, but such an about-face is not countenanced by this Court. To remind the Government of its own seemingly forgotten words, "Far from suggesting any congressional intent to facilitate such invalidation, Section 411(b) is structured as a means of *preserving* the validity of registrations, **not as a trap for the unwary or for those unschooled in copyright law**." Appx1270 (emphasis added). Section 411(b)'s legislative history "confirms that Congress disapproved infringers' attempts to exploit loopholes stemming

from registration requirements, and to reserve invalidation for inaccuracies that result from conscious wrongdoing." *Id.*

Revisiting the *Mabus* factors and unclean hands, the same lack of diligence and bad faith that permeates the Government and ASMR's contract challenges above also permeates their copyright challenge. *Id., 633 F.3d at 1359.* In this case, the first challenge came from ASMR (which the Government thereafter joined) nearly twelve years after HeS's assertion of restricted rights in 2010, ten years after identifying HeS to the Government as owner of the "Commercial" software (Craven letter to Wheatly), eight years since the Government published an SJA identifying ROVR as "proprietary code, " seven years since the Government published a journal article about ROVR identifying HeS as the code's owner, nearly seven years after HeS filed its claim and reassertion of those rights to the Government in 2015, close to four years after the case was filed and the copyright registered in 2018, and after the close of discovery. Repeated misrepresentation and contradictory publications by the Government and ASMR, reliance by HeS, and prejudice to HeS are all demonstrated. While the Court has determined that there was sufficient evidence of errors of fact and law in HeS's

registration filing, and the USCO has stated it would seek further inquiry to confirm the registration if allowed, none of this sustains the challenge by Appellees if what they claim is immaterial or what was done in 2018 by Mr. Greene in 2018 was innocent from his perspective. The lower court requested below that we pay special attention to the implications of two cases that are the progeny of *Unicolors, Inc. v. H & M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 945 (2022), namely: *PalatiumCare, Inc. v. Notify LLC*, No. 22-CV-217, 2023 WL 2929462 (E.D. Wis. Apr. 13, 2023), and *Neman Brothers & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-cv-11181, 2023 WL 115558 (C.D. Cal. Jan. 4, 2023).

As set forth further below, given the pertinent inquiry and results in these two cases, HeS asserted below and reasserts here that certain aspects of this case are more like *PalatiumCare*, particularly those that addressed materiality and validity, and less like *Neman*, which largely focused upon the *Unicolors* factors for discerning knowledge and found the copyright claims invalid for reasons that are simply not present here. As HeS did below, we will also address some other cases that expand upon the principles in these two cases.

As a threshold matter, Appellees attempted in their copyright challenge to focus upon a red herring, namely, that this case is about some nefarious plot to steal the rights to HEALTHeFORCES ("HeF"), a viewer program that only worked with its unique ICDB database, software which the Government never wanted and still does not. As Mr. Kreitzer pointed out in his expert report with respect to the code at issue here over which restricted rights were asserted by HeS, there was "some private development to 'civilianize' it, replacing the HeF portion of the software which provided ICDB access with an HL7 Loader framework and other aspects that gives it the abilities of an EHR. Appx1699; *see also* Appx and exhibits, particularly Appx1669-1678. Ultimately, Mr. Kreitzer concluded that HeF was not a standalone program and was no longer a part of the functionality of HeS's Baseline Software Code upon which this case is based, but that ROVR did in fact contain the HeS Baseline code. Appx1705-1709. Mr. Greene similarly concluded this as well, based upon the development environment they were able to rebuild from the stolen development materials comprised of more than 179,000 individual files and documents Mr. Baker surrendered on October 5,

2021, less than three months prior to the close of discovery and the due date of initial expert reports.[7] Appx 1276 & Appx1344-1345.

Similarly, HeS's software expert, Dr. Hassell, concluded that HeF is not a functional portion of either the HeS Baseline Code or ROVR (Appx1679-1696), and that neither HeS nor ROVR is derivative of HeF (Appx1738-1740) because it did not "incorporate" HeF's code into any function of the overall HeS/ROVR software. *Neman*, *10 (citing USCO Form, Space 6). Moreover, even if HeF and HeS or ROVR could be called the same program or derivative, which they are not as far as HeF is concerned, the Copyright Office states in its Compendium that "[u]nclaimable material should be excluded only if that material is

---

[7] To the extent the Appellees claim that the deposit copy of the code used for USCO by HeS was not exactly the same in every respect, this is also challenged under the *Mabus* factors. *Id.,* 633 F.3d at 1359. First, as demonstrated further below, the Appellees, in their expert report or otherwise, did not demonstrate any substantial material differences from HeS's restricted code, as was their burden in the second phase, and there is no proof that HeS's narrowed claims in supplementary registration has any inaccuracy. Even if there was, an allegation that fails for proof, the fault was ASMR's, as they were the ones who locked HeS out of the development environment and then provided the disk they represented as containing that which was provided to the Government on May 27, 2014. Appx1276; Appx1323; Appx1336-1339; and Appx1344-1347. Given the later allegations by ASMR and the Government, nothing else is needed for misrepresentation to HeS, reliance on same, and prejudice. *Mabus*, 633 F.3d at 1359

copyrightable and represents an appreciable portion of the work." *PalatiumCare*, *6 (citing Compendium § 721.8). The court in *PalatiumCare* goes on to emphasize that "substantial" or "appreciable" are undefined in this context (as of 2018) yet continues the inquiry because in its words "PalCare seeks to copyright a *distinct* software program from those open-source programs on which it drew." *Id.* That is not the case here. Further illustrative of this is Mr. Greene's explanation of HeF compared to the HeS Baseline (Build 252) and ROVR (Build 311) which he could do once the HeS development environment was surrendered by the Defendants. His chart shows in red that none of the primary functionalities upon which the contract and copyright claims are based are present in HeF, and that the lines of code for HeF are only about 4% of the others, even if it was a functional part of the later programs, which it is not. Appx1276-1278 & Appx1296-1298. The foregoing stands unrefuted in substance, which was the Defendants' burden below, although the lower court erred and did not require it. This should have rendered their challenge immaterial, and because such was not considered reversal is appropriate.

Even if any errors were material, which they were not, the reasons given by Mr. Greene in his declarations are legitimate evidence and offer good reasons for his lack of knowledge of law and fact, as well as the absence of ill motive. Appx1278 & Appx2372-2374. "Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration." *Unicolors,* 142 S. Ct. at 945. While the court need not automatically accept a copyright holder's claim of lack of knowledge, the courts considering such matters since *Unicolors* that have, as here, been provided evidence of plausible explanations, have found a "legitimate excuse" and confirmed validity. *Accord Gaffney,* \*6. This is particularly true as to "publication," another challenge by Defendants, where "the [Copyright] Office has noted a "relative lack of consensus among courts" concerning "the definition of publication in the modern context," a pronouncement made after the time registration occurred here. *ReportHost, LLC v. Spectora,* 2023 WL 2782285 (D. Co., March 29, 2023), \*3 (citing 84 FR 66328, 66329 (2019)). Moreover, this case is not the same as *PalatiumCare* in at least one critical aspect; namely, that there is substantial evidence of ASMR secreting pertinent information from HeS and Mr. Greene's lack of knowledge of fact and law, both of which

contributed to the alleged errors here. *See* footnote 9, *supra*; Appx1278 & Appx2372-2374. Any allegation that Mr. Greene chose the publication dates or any other aspects of registration for some nefarious reason is ridiculous and squarely rebutted by him in his declaration, making Defendants' theories about that "paranoid," to use parlance adopted by the *PalatiumCare* court. *Id.,* *10.

Nor does the *Neman* case help Defendants here. In *Neman*, the court considered the so-called *Unicolors* factors, which provide that for a finding of knowledge or willful blindness, courts may consider "[c]ircumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters." *Id.,* *8. In contrast to the facts on these factors in *Neman*, Mr. Greene: (1) did not have any experience in copyright registration or law (Appx1274-1275, ¶ 4; Appx2374, ¶ 6); (2) did not employ counsel to assist (nor did undersigned counsel – Appx 1389-1393 & Appx); (3) did not have access to the development environment at the time due to ASMR's misconduct and, therefore, did not have all the information available (Appx2373-2374, ¶ 3); (4) could not fully review the submissions because of his own computer's limitations

and the Copyright Office's conversion requirements (Appx2374, ¶¶ 4-5); (5) did not have a full understanding of the terms derivative or publication in the context of the COTS software at issue, and has a plausible explanation for it not being material here (Appx1275-1278); and (6) the lack of any motive that can be ascribed to Mr. Greene to get it wrong, since he didn't know anything about copyright law in 2018, yet read and considered the instructions to the best of his ability and spoke to the Copyright Office for assistance (Appx1276-1278). On each of the foregoing factors, the *Neman* court found the facts to be the opposite, which ultimately led to the invalidity in that case. *Id.* *10-13. Because those factors are very different here, and knowledge cannot be imputed to Mr. Greene, we respectfully assert that it was error for the lower court to find the HeS's registrations invalid.

The case of *Oliver v. Meow Wolf, Inc.*, Civ. No. 20-237, 2022 WL 3682936 (D.N.M. Aug. 25, 2022), cited by Appellees below, was completely different because the examiner did not give these instructions and Mr. Greene did not ignore anything he was told, including converting the submission to MS Word. Appx1278, ¶ 11. As demonstrated by HeS below, what occurred here was more akin to that in *Gaffney v.*

*Muhammad Ali Enterprises LLC*, 2022 WL 4095953 (S.D.N.Y., September 7, 2022). In that case, the court accepted unrebutted cogent explanations about why the registering party believed in "discernable legal difference[s]" regarding what constitutes publication and accepted that party's "legitimate excuse for any purported inaccuracy." *Id.* *6. The result should not have been different here.

Similarly, *dmarcian,* Inc. *v. DMARC Advisor BV*, 2023 WL 3971433 (W.D. NC, June 12, 2023) *7-8, is also distinguishable. Mr. Greene explained what he did in detail to comply with filing a representative copy of both ROVR and the Baseline Code, and how he believed it was representative, based upon representations of both ASMR and Mr. Baker (Appx2373-2374); he also explains in his declaration how he confirmed the Baseline Code is present and how ASMR has unclean hands to assert otherwise. Appx1275-1278. It is simply not the case that Mr. Greene did not try to submit a substantially compliant copy of the Baseline Software and ROVR's use of it, since he did (*Accord* Appx1738-1740, Appx1741-1758 & Appx1679-1696), or that he either knew differently at the time or had the ability to discern in the code what was operative and not at the time, as he did not. Appx1276-1278 and Appx2372-2374. However, as

the Government admitted below, the Baseline Software at issue is contained in ROVR and remains in use. Appx465-467, Appx484 & Appx597; Appx1480 & Appx1629. This is another key distinction not present in *dmarcian*. *Id.* at *10, n. 7.

Ultimately, it was error for the lower court to find that the issues they raise are material or that there was any knowing misrepresentation of law or fact in Mr. Greene's submission to the USCO, and even if such is alleged, it is more properly determined after an evidentiary hearing and testimony on same, where such can be heard rather than through assumptions that seek to define a meaning contrary to any that was intended.

### 2. The Abstraction-Filtration-Comparison Test Was Not Needed and Misapplied by the Lower Court

While the lower court cited *Oracle Am., Inc. v. Google, Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014), it did not correctly apply the tenets in that case. If it had, it would not have granted summary judgment on HeS's Copyright Claim when it improperly excluded Dr. Hassell. As noted in the facts above, Dr. Hassell opined that abstraction-filtration-comparison ("AFC") test was not applicable because she had reviewed "the entire corpus" of the code provided and determined that there was literal

copying, particularly, of "constituent structural parts" of HeS's claimed restricted code. Appx1864, ¶ 9; Appx2541-2545 & Appx2605. Moreover, this was confirmed with admission, stipulations, and other pertinent reviews. Appx2541-2545 & Appx2605; *Compare* Appx1277 ¶ 10 & **Appx1296-1319**(actual code excerpts omitted)[8] *with* Appx2033-2035 & Appx1354-1364; *see also* Appx1864, Appx, Appx1880-1882, Appx1898 & Appx1948.

As this Court stated, the full AFC analysis only applies where a copyright owner alleges infringement of the non-literal aspects of its work. Where, as here, "admitted literal copying of a discrete, easily-conceptualized portion of a work" is at issue—as with *Oracle's* declaring code—a court "need not perform a complete abstraction-filtration-

---

[8]     Because the Court never required the Appellees to rebut the proof by HeS in the abstraction step that showed literal copying of "constituent structural parts," HeS has not included in the record the full literal code copying results in ROVR of the claimed restricted portion by the Government and ASMR that spans nearly 1500 pages. Appx1312-1319. This is "substantial" under any meaning of the word. We do not think it necessary for the Court to reach the third step in the AFC test since the Court can reverse because the lower court improperly expended the proof required at the abstraction step by HeS, even if it was needed, which it was not, and did not require any proof from the Government and ASMR on the filtration step. *Oracle*, 750 F.3d at 1357. But, to the extent this Court deems such a review proper, HeS reserves the right to file these highly confidential source code excerpts under seal.

comparison analysis" and may focus the protectability analysis on the filtration stage, with attendant reference to standard copyright principles. *Oracle,* 750 F.3d at 1380, n. 4 (citing *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1372-1373 (10th Cir. 1997); *see also McNeese v. Access Midstream Partners, L.P.,* 2017 WL 972156 *8 (W.D. Ok., March 10, 2017).

The AFC test eschews bright line approaches and requires a more nuanced assessment of the particular program at issue in order to determine what expression is protectable and infringed. As the Second Circuit explains, this test has three steps. In the abstraction step, the court "first break[s] down the allegedly infringed program into its constituent structural parts." *Oracle,* 750 F.3d at 1357. In the filtration step, the court "sift[s] out all non-protectable material," including ideas and "expression that is necessarily incidental to those ideas." *Id.* In the final step, the court compares the remaining creative expression with the allegedly infringing program. *Id.*

As is clear from its decision, as compared with the facts above, the lower court skipped the first step, and that colored the rest of its analysis. This was not for lack of competent and undisputed evidence from HeS.

As noted above, Mr. Greene, Mr. Kreitzer, and Dr. Hassell all reviewed the code in detail to the extent they had it and concluded that the "constituent structural parts" which were claimed by HeS with restricted rights, and thereafter narrowed in HeS's supplementary registrations (Appx2206 through Appx2218; Appx2315), were all present in ROVR. These parts included a standalone EMR, the HL7 Loader Engine, the Task Management Framework, the faxing system framework, eRX, Labcorp Interface, X-Link Interface, Quest Interface, and CCHIT database structure. *Compare* Appx 1277¶ 10 & Appx1312-1319 (actual code excerpts omitted) *with* Appx 2033-2035 & Appx1354-1364; *see also* Appx1864, Appx1876-1878, Appx1880-1882, 1898 & Appx1948. As noted above, this is exactly the type of supplementation the USCO said it would allow, and HeS so advised the lower court. *Accord* Appx2319 (quoting Appx2317).

Rather, in its haste to get to its *sua sponte* summary judgment on copyright infringement, the lower court simply ignored it, skipped to the end, and improperly shifted the burden of proof to HeS and its experts. In so doing, the lower court leapt to a conclusion that none of the Defendants offered, specifically, that the ROVR code in use by the

Government did not contain HeS's copied code over which it was claiming breach and copyright violations. As the case proceeded, this was not all of the code for the limited purposes of summary judgment. Appx1759-1802, Appx2181-2314 & Appx2388-2390. It was, rather, limited to those portions of HeS's code over which restricted rights had been asserted, and by that time HeS had supplemented its registration to exclude anything else. Appx2206-2210& Appx2211-2214. The lower court said that such was improper and did not consent to the USCO's consideration of it, ignoring that USCO thought it was proper and provided copious online resources to facilitate just such supplementary filings. Appx2318-2320. This was error and a violation of due process.

### 3. The Lower Court Improperly Shifted the Burden to HeS to Exclude Its Expert and Consider Immaterial Portions of HeS's Code to Reach the Result It Did

While the lower court cited *SAS Institute, Inc. v. World Programming Limited,* 64 F.4th 1319 (Fed.Cir.2023), even if the full AFC test were applicable, which it was not, the lower court did not adhere to the principles and framework contained in and accepted by this Court. As noted above, the AFC Test is not needed where, as here, literal copying is admitted, indeed stipulated to, by the parties as fact. Appx2122-2129.

In *SAS*, this Court laid out the "analytical framework…consistent with established precedent" and described it as follows:

> The district court correctly determined that, through evidence of valid copyright registrations, SAS established a required threshold of protectability. Consequently, it became WPL's burden to establish what, if any, elements of the copyrighted work are not protected. WPL showed that at least a substantial portion of the allegedly infringed elements of the SAS System are not protectable by copyright. At that point, the district court correctly provided SAS with an opportunity to identify the constituent elements of the work that are protectable.

*Id.*, 64 F.4th at 1330. All one needs to do to properly apply this to the case at bar is to switch HeS for SAS and the Government/ASMR for WPL above. This is not what the lower court did.

Instead, the lower court ignored the evidence properly presented by HeS in the phase one abstraction step of the literal copying of "constituent structural parts" of HeS's claimed restricted code and shifted the burden to HeS in the second phase for HeS to demonstrate with an expert opinion which elements were and were not protectable. The lower court did not require anything from the Appellants on these points as required, and even ignored their admissions that HeS's code had in fact been copied. This was a clear error and, as demonstrated

above, did not comport with any proper analysis dictated by this Court in either *Oracle* or *SAS*. To further exacerbate this error, the lower court did not allow any type of Copyrightability Hearing, providing the parties notice and allowing them to brief, argue, and <u>present evidence</u> on the legal question of copyrightability. *Accord SAS,* 64 F.4th 1332.

Instead, as demonstrated above, the lower court *sua sponte* took it upon itself to accelerate the process without any notice or warning whatsoever, exclude HeS's expert based upon bald assumptions at odds with the proof and the proper legal standard at the abstraction phase, ignore all evidence where HeS ownership and literal copying of its code were admitted by the Government and ASMR, ignore the actual comparison of code demonstrating copying, and enter a summary judgment that was never requested or supported, all without any evidence having been presented by either the Government or ASMR which material portions of the code over which protection was sought were not protectable. *Id.,* 64 F.4th at 1333. The exclusion of an expert and granting of summary judgment *sua sponte* based upon such a misapplication of the law "distort[s] the entire infringement analysis" and is legal error that clearly prejudiced HeS. *E.g., Associated*

*Equipment Corp. v. Authorized Motors Parts Corp.,* 996 F.2d 317 (Table)1993 WL 98842 * 2-3 (Fed.Cir.1993).  This warrants reversal.

## <u>CONCLUSION</u>

For the foregoing reasons, the decision of the lower court should be reversed, and judgment rendered in favor of Appellant.

Respectfully submitted,

NEEL, HOOPER & BANES, P.C.
BY: _____/s/_____
BRYANT S. BANES
Texas State Bar No. 24035950
Email:  bbanes@nhblaw.com
1800 West Loop South, Suite 1750
Houston, Texas 77027
Telephone: (713) 629-1800
Facsimile: (713) 629-1812

ATTORNEY FOR APPELLANT

# CERTIFICATE OF SERVICE

I hereby certify that on **March 8, 2024**, I electronically filed the foregoing ***Appellant's Brief*** with the clerk of the court for the Federal Circuit Court of Appeals, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Docket Activity" to the following attorneys of record who have consented in writing to accept this notice as service of this document by electronic means:

Scott Bolden
Acting Director
Intellectual Property Section
Commercial Litigation Branch
Department of Justice – Civil Division
Washington, D.C. 20530
Telephone: (202) 307-0262
scott.bolden@usdoj.gov

*Attorney for Appellee, United States*

Ranganath T. Sudarshan
Covington & Burling, LLP
One CityCenter
850 Tenth Street
NW Washington, D.C. 20001
Telephone: (202) 662-5346
rsudarshan@cov.com

*Attorney for Appellee, ASM Research, LLC*

/s/ Bryant S. Banes
Bryant S. Banes

# CERTIFICATE OF COMPLIANCE WITH RULES 27(D)(2)(A), 32(A)(5) AND 32(A)(6)

Certificate of Compliance with Length Limits, Typeface Requirements, and Type-Style Requirements

1.   This brief complies with the type-volume limit of Fed. R. App. P. 37(a)(7)(B) and Fed. Cir. R. 32(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b):

[x] this brief, which was produced using a computer, contains 13,391 words, *or*

[ ]  this brief was handwritten or typewritten and does not exceed 30 pages, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x] this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Century Schoolbook, 14 Point font (Century Schoolbook, 14 point font for the footnotes), *or*

[ ] this brief has been prepared in a monospaced typeface using _____ with _____.

*/s/ Bryant S. Banes*
**BRYANT S. BANES**

Attorney for Appellant
Dated: **03/08/2024**

# **<u>ADDENDUM</u>**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1336

**Short Case Caption:** HealtheState, LLC v. US

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains <u>2</u> number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 03/08/2024

Signature: 

Name: Bryant S. Banes